*284
 
 OPINION OF THE COURT
 

 Smith, J.
 

 The issue here is whether a construction project developed with the assistance of an industrial development agency is properly considered a "public improvement” under State Finance Law § 137 requiring alternative bonds to insure that suppliers of goods and services will receive payment. Because we hold that the subject project is not a "public improvement” within the meaning of the statute, we affirm the order of the Appellate Division.
 

 In 1988 defendant Indeck Energy Resources of Silver Springs, Inc., a privately owned company, entered into an installment sale agreement with defendant Wyoming County Industrial Development Agency (WCIDA) to secure tax and other benefits in conjunction with its development of an energy cogeneration plant for the production of steam and electric energy for sale to private companies. The agreement contained sale and leaseback provisions which essentially resulted in WCIDA’s status as a temporary owner for tax purposes. These parties also executed a credit agreement with the Bank of New England, N. A., with Indeck as the borrower. Under the installment sale agreement and the credit agreement, all risks and benefits associated with the project were to be borne by Indeck.
 

 Indeck enlisted National Energy Production Corp. (NEPCO) as its general contractor. NEPCO hired Fels Co., Inc. (Fels) for steel-related work. Fels contracted with plaintiff Davidson, who delivered steel pipe and related materials to Fels at an agreed price of $136,639.32, which has not yet been paid to Davidson. Davidson subsequently commenced this action against WCIDA, its members and Indeck seeking the balance due on its debt from Fels. The complaint alleged that the project was a public improvement under State Finance Law § 137 (1) and that defendants were responsible for the failure to obtain a bond to secure payment of moneys owed for materials.
 

 Supreme Court granted plaintiff’s motion for partial sum
 
 *285
 
 mary judgment, holding defendants liable for their failure to require an additional payment bond on the project, and denied defendant’s cross motion to dismiss the complaint (156 Misc 2d 989). According to that court, the project properly constituted a "public improvement.” Defendants appealed and the Appellate Division unanimously reversed Supreme Court’s judgment, granted defendants’ cross motion and dismissed the complaint as against all defendants. The Appellate Division disagreed with Supreme Court’s characterization of the project as a "public improvement.” This Court granted plaintiff’s motion for leave to appeal.
 

 Plaintiff contends that the underlying project is a "public improvement” for the purposes of State Finance Law § 137 (1) based on the remedial purpose of the statute and its legislative history. Defendants disagree, claiming that the project is not a "public improvement” under the statute.
 

 New York’s Lien Law permits suppliers of materials to obtain mechanics’ liens upon an owner’s real property and improvements to guarantee payment for services and materials provided and restricts a party’s recovery to the agreed price "of the labor and materials remaining unpaid”
 
 (see,
 
 Lien Law §4 [1]). The State Finance Law provides alternative protection for projects determined to be "public improvements” by requiring the posting of a bond to guarantee payment
 
 (see,
 
 State Finance Law § 137 [1]).
 
 *
 
 By the enactment of the additional bond scheme, the Legislature sought to remedy the lack of protection given by the Lien Law to those who furnish materials in connection with State contracts
 
 (see, Chittenden Lbr. Co. v Silberblatt & Lasker,
 
 288 NY 396, 402;
 
 see also,
 
 L 1985, ch 137, § 1 [1985 amendment to State Finance Law evidenced Legislature’s further effort to safeguard rights of workers of the State]). It is in the State’s interest to encourage the alternative bonding of construction contracts for "public improvements” to avoid the reputation of permit
 
 *286
 
 ting or otherwise failing to deter default on obligations for such projects.
 

 We disagree with plaintiff that the alternative bond scheme under the State Finance Law is applicable here. While WCIDA is a public benefit corporation under the General Municipal Law
 
 (see,
 
 General Municipal Law § 856 [2]; §§ 858, 901-b) and a public corporation under Lien Law § 2 (6), that is not the controlling factor here. Its ownership of the property was only temporary under the agreement. Indeck, an admittedly private entity engaged in the cogeneration business for profit, is the ultimate beneficiary of the cogeneration plant. Indeck is the entity which will carry on the business, and the profits and losses will belong to it.
 

 This Court addressed a similar issue of the nature of an industrial development agency in
 
 Matter of Erie County Indus. Dev. Agency v Roberts
 
 (94 AD2d 532,
 
 affd on opn below
 
 63 NY2d 810) and emphasized the private character of its business. What we said there is equally applicable here:
 

 "The conveyance of legal title to the agency with simultaneous lease back to the company is structured merely as a mechanism to facilitate financing and is not a genuine allocation of ownership in the agency. The economic benefits and burdens of ownership are reserved to the company and the agency serves only as a conduit for the tax benefits provided by such an arrangement * * *. The agency’s role is strictly that of an intermediary to insure that private parties qualify for tax exemptions; it assumes no risk of loss and has no opportunity to gain”
 
 (id.,
 
 at 539-540).
 

 In other contexts, the Legislature has defined the term "public improvement.” The over-all theme of the definition is that of construction of public facilities. General City Law § 20-e (2) (b) and County Law § 850 (2) (b), using essentially the same language, define the term as follows:
 

 "The term 'public improvement’ or 'public improvements’ is defined to include but not limited to a courthouse, an archives and records center, a museum, a laboratory, a park, a garden, a recreation area, restaurants, shops, the installation of trees, shrubs and other landscaping, a monument, fountain, sculpture, a plaza, a substructure and parts thereof, mechanical, pedestrian or vehicular
 
 *287
 
 accessways, a parking garage, a parking lot, a pedestrian walkway or overpass or underpass, an arterial highway or connection, a crossroad or access road, a transportation terminal or shelter, a meeting hall, a civil defense shelter against radioactive fallout or blast, and other public structures and facilities intended for the use of state or municipal employees and the public at large” (General City Law § 20-e [2] [b]).
 

 This is consistent with this Court’s characterization of section 137 of the State Finance Law as focused upon State-sponsored work
 
 (see, Chittenden Lbr. Co. v Silberblatt & Lasker,
 
 288 NY 396, 402,
 
 supra).
 

 Plaintiff claims that the definition of “public improvement” contained in Lien Law § 2 (7) is more indicative of the Legislature’s intent here. That statute defines “public improvement” as “an improvement of any real property belonging to the state or a public corporation”. This Court’s decision in
 
 Roberts (supra)
 
 is flatly contrary to this interpretation, however. Additionally, the 1992 amendment to that Lien Law statute also confirms the nonpublic nature of the underlying enterprise here. In 1992, Lien Law §2 (7) was amended to “[exclude] certain real property owned by an industrial development agency from the definition of public improvement” (L 1992, ch 662). The amendment states, in part:
 

 ”[I]f the beneficial interest of an improvement is in an entity other than the state or a public corporation
 
 notwithstanding legal title being vested in an industrial development agency created under article [18J-A of the general municipal law, then such improvement shall be considered an improvement of real property subject to mechanics’ liens on real property as provided in section three of this chapter.
 
 Nothing contained in this section shall create or be deemed to create any liability upon any industrial development agency for the payment of the cost of any improvement, or otherwise”
 
 (id.
 
 [emphasis added]).
 

 This amendment thus permits private liens to be filed against projects involving industrial development agencies as owners. The result is that the Legislature has made it clear that much more is required of an entity, at least more than temporary ownership by an industrial development agency as here, to
 
 *288
 
 show that a project is properly denominated a "public improvement” for the purposes of State Finance Law § 137.
 

 Plaintiff contends that the 1985 amendment to State Finance Law § 137 (1) evinces the legislative intent that the statute apply to IDA projects. The amendment added "public benefit corporation^]” as one of the public entities that must require the posting of bonds
 
 (see,
 
 L 1985, ch 137, § 10). Industrial development agencies are defined as public benefit corporations
 
 (see,
 
 General Municipal Law § 856 [2]), but the mere inclusion of the IDA in State Finance Law § 137 (1) does not mandate compliance with the statute on
 
 all
 
 IDA projects. The statute’s application remains limited to "public improvements” prosecuted by the public benefit corporation. Because the cogeneration plant at issue is not a public improvement within the meaning of the statute, defendants were not obligated to require the posting of a bond. Therefore, because the project here was not of the class contemplated by the Legislature to be entitled to the alternative bond protection of State Finance Law § 137, the Appellate Division properly dismissed plaintiff’s complaint.
 

 Our decision here renders it unnecessary to reach the issue regarding plaintiff’s private cause of action.
 

 Accordingly, the order of the Appellate Division should be affirmed, with costs.
 

 Chief Judge Kaye and Judges Simons, Bellacosa, Levine and Ciparick concur; Judge Titone taking no part.
 

 Order affirmed, with costs.
 

 *
 

 "Bond to secure payment of certain claims arising from a public improvement; enforcement.
 

 "1. In addition to other bond or bonds, if any, required by law for the completion of a work specified in a contract for the prosecution of a public improvement for the state of New York a municipal corporation, a public benefit corporation or a commission appointed pursuant to law, or in the absence of any such requirement, the comptroller may or the other appropriate official, respectively, shall nevertheless require prior to the approval of any such contract a bond guaranteeing prompt payment of moneys due to all persons furnishing labor or materials to the contractor or his subcontractors in the prosecution of the work provided for in such contract.”